In the Matter of SAMUEL SCHLEIMER, an Attorney, Respondent.

First Department, December 31, 1930.

*Isidor J. Kresel* [*Sidney Handler* of counsel], for the petitioners.

*Fowler & Fay* [*Stanley C. Fowler* and *Ralph O. L. Fay* of counsel], for the respondent.

DOWLING, P. J.   The respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Supreme Court of the State of New York, Appellate Division, First Department, April 6, 1914.

The petitioners filed a petition charging respondent with professional misconduct.   He appeared and answered.   A referee was appointed to take testimony and report the same with his opinion thereon.   Before the hearings were closed this referee died. Another referee was thereupon appointed and it was stipulated that the evidence already taken might be received by the new referee with the same force and effect as if adduced before him. Further hearings were thereafter held.   The learned referee has duly reported and the matter is now before the court on a motion, by the petitioners, for such action as the court may deem just and proper.

The petition charged misconduct under five headings, viz., solicitation; failure to obtain orders authorizing settlement of infants' cases; failure to comply with a court order fixing respondent's fee in an infant's case; withholding moneys from clients; and prosecuting a false claim.

The referee found that there is not sufficient evidence to sustain the charges of prosecuting a false claim, withholding moneys from clients and failure to comply with order fixing respondent's fee in an infant's case.   The petitioners concur in this finding.

With reference to the charge that respondent failed to obtain orders authorizing settlement of infants' cases' the respondent stated in his answer that in infants' cases involving sums not in excess of $100 he followed the then prevailing custom of settling the claim by securing an affidavit and release from the parent, which the

insurance company accepted in lieu of a court order. The referee, in his report, states: " In all cases where no order was procured settlements were for $100 or less.

" Undoubtedly the charge must be sustained inasmuch as the law required such an order to be procured irrespective of the amount of the compromise. In my judgment, however, respondent in failing to comply with the provisions of the statute acted in good faith and in the belief that such orders were not required in small cases. At no time did the insurance company with which most of these cases were settled demand or request that any court order be obtained.

" The Appellate Division of the Supreme Court has recently had a number of cases before it indicative of the opinion which formerly prevailed that the law did not require such an order to be obtained. Indeed, some Municipal Court Judges at times refused to fix attorneys' fees in infants' cases. This, of course, does not excuse respondent from a violation of his statutory duty, but these facts are to be taken into consideration in determining the motive which prompted or actuated him. It is undoubtedly true that the ordinary allowance made to attorneys where a settlement is approved by the Court is substantially less than the 50% provided for in respondent's retainers. None the less, the cases involved were not numerous, the amounts involved were small, and after an examination of the entire record I am satisfied that respondent acted in good faith and in the mistaken belief that court orders were not required."

The court has heretofore expressed its view regarding this practice of ignoring the requirements of section 474 of the Judiciary Law. (See *Matter of Jeromer*, 228 App. Div. 123; *Matter of Goldberg*, 227 id. 502; *Matter of Uran*, Id. 496; *Matter of Kreizvogel*, 228 id. 490; *Matter of Seligsohn*, 227 id. 480.) There is no need to reiterate them here.

To sustain the charge of solicitation the petitioners rely on the testimony regarding the activities of Mrs. Theresa Braun. It appears that Mrs. Braun is a cousin of the respondent. Early in her married life her husband deserted her and left her as the sole support of three children. Thereafter respondent and his family helped support her and her children, and their assistance continued until, through their help and the assistance of one of the Hebrew philanthropic organizations, she was enabled to open a second hand clothing store in what is familiarly known as the York-ville section of Manhattan. She maintained this store from 1915 until 1926. In 1924 she became a real estate broker and used the store for office purposes, as well. , Through Mrs. Braun respondent

obtained retainers in from twenty-five to forty cases a year. The vast majority of these were tenement house stairway cases originating in the Yorkville section. The learned referee has carefully analyzed the testimony regarding Mrs. Braun's activities. In his report he states: " In every case in which it is charged that there was improper solicitation by Mrs. Braun, the evidence showed that Mrs. Braun got into contact with the injured person through some mutual acquaintance or friend. In some of these cases, it appears that Mrs. Braun did not step beyond the bounds of propriety. There are a few cases, however, in which I am convinced that Mrs. Braun learned from some mutual acquaintance of an accident that had occurred and thereupon called upon the injured party, using the name of the mutual acquaintance, and urged such injured party to bring suit, retaining the respondent. Mrs. Braun recommended respondent in a large number of cases. Undoubtedly she was alert in following up any information which came to her about any accident to any one in the neighborhood. I find that, in at least a few cases, she induced persons to sue who, at the time of her visit, had no intention of bringing suit. Her activities were probably occasioned by her friendship for her cousin, the respondent, and her gratitude to him. I believe that she may likewise have been influenced by the fact that ultimately she might secure some compensation from the parties injured if they settled their cases or recovered judgments. Mrs. Braun received no compensation from the respondent, directly or indirectly. Nor is there any suggestion that in interviewing prospective claimants she dilated upon respondent's success in past actions, showed newspaper clippings or the like, or used the reprehensible methods of which there have been so many examples presented to this Court in recent years.

" The respondent was not at all aware of any improper act on Mrs. Braun's part. He did not give her retainers to have signed. He did not employ her nor pay her any compensation. The parties injured, almost without exception, called on respondent at his office to retain him. The respondent did have a large number of accident cases in 1924 and 1925. There is, however, no suggestion that they came to him from any illegitimate or improper source, or through any improper means, except where solicited by Mrs. Braun. Under these circumstances, while I find that there was, in a few instances, improper solicitation on Mrs. Braun's part, I likewise find that this was not with respondent's knowledge or consent."

In *Matter of Kreindler* (228 App. Div. 492) we had occasion to consider the activities of Mrs. Braun in behalf of another attorney.

There she was employed by the attorney, Harry E. Kreindler, as investigator, and remained in his employ as such from 1925 to 1928, beginning on a salary of twenty-five dollars per week and later receiving fifty dollars per week. It was her boast that she was pretty nearly as well known in her community as Tom Farley, the Democratic leader of his district and sheriff of New York county. The court found that she was actively soliciting retainers for Kreindler, which he accepted and benefited by.

In the present case Mrs. Braun testified that she was only too glad to suggest respondent as attorney " because I owe them so much. I owe them most of my life. I certainly owe them a lot." Both she and respondent testified that she was never paid anything for anything she may have done for respondent.

The record discloses that respondent was never engaged in negligence practice to any great extent. In 1924, when this practice was at its height, it contributed approximately twenty-five per cent of his income. In 1926 it constituted only two per cent of his income. Since 1926 he has been engaged exclusively in the practice of law relating to a semi-banking institution with which he is connected.

In settling infants' cases without orders, as required by section 474 of the Judiciary Law (as amd. by Laws of 1912, chap. 229), and in accepting retainers coming to him through efforts of Mrs. Braun, respondent was careless. But in view of all the circumstances, we are inclined to accept the recommendations of the learned referee.

The proceeding should be dismissed.

FINCH, McAVOY, MARTIN and SHERMAN, JJ., concur.

Proceeding dismissed.